# Exhibit A

IN THE IOWA DISTRICT COURT IN AND FOR MILLS COUNTY

| | |
|---|---|
| **PAM BLACKBURN,** individually and on behalf of a class of similarly situated individuals,<br><br>**PLAINTIFF**,<br><br>V.<br><br>**CHAMPION PETFOODS USA, INC.** and **CHAMPION PETFOODS LP**,<br><br>**DEFENDANTS**. | **CASE NO. _____**<br><br><br>**ORIGINAL NOTICE** |

TO EACH OF THE ABOVE-NAMED DEFENDANTS:

You are hereby notified that there is now on file in the office of the Clerk of the above court a Petition in the above-entitled action, a copy of which is attached hereto (along with copies of any documents filed with it). The Plaintiff's attorneys are J. Barton Goplerud and Brandon M. Bohlman of the law firm of Shindler, Anderson, Goplerud & Weese, P.C., whose address is 5015 Grand Ridge Drive #100, West Des Moines, Iowa 50265, whose phone number is 515-223-4567, and whose fax number is 515-223-8887.

Iowa is a state which utilizes electronic filing in all counties. General rules and information on electronic filing are contained Iowa Court Rules Chapter 16. Information regarding requirements related to the protection of personal information in court filings is contained in Iowa Court Rules Chapter 16, Division VI. You must serve a motion or answer within 20 days after service of this Original Notice upon you by using the Iowa Judicial Branch Electronic Document Management System (EDMS) at www.iowacourts.state.ia.us/efile, unless you obtain from the court an exemption from electronic filing requirements. If you do not file your appearance, motion to answer within 20 days from the date you are served with this Original Notice, judgment by default will be rendered against you for the relief demanded in the Petition.

> CLERK OF COURT
> Mills County Clerk of Court
> 418 Sharp Street
> Glenwood, IA 51534

NOTE: The attorney who is expected to represent the Defendant(s) should be promptly advised by Defendant(s) of this Original Notice.

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your District ADA Coordinator at 712-328-5883. (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942).

E-FILED  2018 OCT 19 2:17 PM MILLS - CLERK OF DISTRICT COURT

# STATE OF IOWA JUDICIARY

*Case No.* CVCV026865

*County* Mills

*Case Title* PAM BLACKBURN V. CHAMPION PETFOODS USA, ET AL.

**THIS CASE HAS BEEN FILED IN A COUNTY THAT USES ELECTRONIC FILING.**
Therefore, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless you obtain an exemption from the court, you must file your Appearance and Answer electronically.

You must register through the Iowa Judicial Branch website at http://www.iowacourts.state.ia.us/Efile and obtain a log in and password for the purposes of filing and viewing documents on your case and of receiving service and notices from the court.

**FOR GENERAL RULES AND INFORMATION ON ELECTRONIC FILING, REFER TO THE IOWA COURT RULES CHAPTER 16 PERTAINING TO THE USE OF THE ELECTRONIC DOCUMENT MANAGEMENT SYSTEM:**
http://www.iowacourts.state.ia.us/Efile

**FOR COURT RULES ON PROTECTION OF PERSONAL PRIVACY IN COURT FILINGS, REFER TO DIVISION VI OF IOWA COURT RULES CHAPTER 16:** http://www.iowacourts.state.ia.us/Efile

| |
|---|
| *Scheduled Hearing:* |

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at **(712) 328-5883**   . (If you are hearing impaired, call Relay Iowa TTY at **1-800-735-2942**.)

*Date Issued* 10/19/2018 02:17:08 PM



*District Clerk of* Mills                    *County*

/s/ Kim Carter

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

## IN THE IOWA DISTRICT COURT IN AND FOR MILLS COUNTY

| | |
|---|---|
| **PAM BLACKBURN,** individually and on behalf of a class of similarly situated individuals,<br><br>**PLAINTIFF**,<br><br>V.<br><br>**CHAMPION PETFOODS USA, INC.** and **CHAMPION PETFOODS LP**,<br><br>**DEFENDANTS**. | **CASE NO. _____**<br><br><br>**CLASS ACTION PETITION AND JURY DEMAND** |

1.     Plaintiff Pam Blackburn ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned attorneys, brings this Class Action Petition against Defendants Champion Petfoods USA, Inc. and Champion Petfoods LP ("Defendants"), for their negligent, reckless, and/or intentional practice of misrepresenting and failing to fully disclose the presence of heavy metals and toxins in their pet food sold throughout the United States.  Plaintiff seeks both injunctive and monetary relief on behalf of the proposed Class (defined below), including requiring full disclosure of all such substances in their marketing, advertising, and labeling and restoring monies to the members of the proposed Class.  Plaintiff alleges the following based upon personal knowledge as well as investigation by her counsel and as to all other matters, upon information and belief. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

**DEFENDANTS MARKET THEMSELVES AS ONLY SELLING PREMIUM DOG
FOOD WITH THE SIMPLE MISSION OF
"TO BE TRUSTED BY PET LOVERS"**

2.      Defendants manufacture, market, advertise, label, distribute, and sell pet food under the brand names Acana and Orijen throughout the United States, including in this District.

3.      Defendants have created a niche in the pet food market by "making biologically 'appropriate' pet food- as close to what animals would eat in nature as possible- and producing it using fresh, natural ingredients…"  They then charge a premium for this purportedly higher-quality food.  The founder of the company, Peter Muhlenfeld, said, "Our core family beliefs are [] entrenched in the company, and that is to make the very best food."[1]

4.      Defendants tout that "Biologically Appropriate™ Orijen represents a new class of food, designed to nourish dogs and cats according to their evolutionary adaptation to a diet rich and diverse in fresh meat and protein[]" and that it is "trusted by pet lovers everywhere."[2]

5.      Defendants' packaging and labels further emphasize fresh, quality, and properly sourced ingredients and even declare their dog food has "ingredients we love":

---

[1] The Globe and Mail, "How once-tiny pet-food maker took a bite of the global market," Jan. 16, 2018,https://www.theglobeandmail.com/report-on-business/small-business/canadian-powerhouse-export-your-dog-is-eating-it/article37605774/ (last visited Feb. 6, 2018).

[2] https://www.orijen.ca/us/

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT



6.      Yet nowhere in the labeling, advertising, statements, warranties,  and/or packaging do Defendants disclose that the Contaminated Pet Foods (defined herein) contain levels of arsenic, mercury, lead, cadmium and/or Bisphenol A ("BPA") — all known to pose health risks to humans and animals, including dogs:[3]

| Product Name | arsenic ug per kg | bpa ug per kg | cadmium ug per kg | mercury ug per kg | lead ug per kg |
|---|---|---|---|---|---|
| Acana Regionals Wild Atlantic New England Fish and Fresh Greens Dry Dog Food | 3256.40 | 32.50 | 113.00 | 51.20 | 249.30 |

---

[3] All the below pet food collectively is referred to as the "Contaminated Dog Foods."  Discovery in this action likely will lead to the identification of additional products based on Defendants' public acknowledgment that their foods do contain heavy metals.

E-FILED 2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

| Product Name | arsenic ug per kg | bpa ug per kg | cadmium ug per kg | mercury ug per kg | lead ug per kg |
|---|---|---|---|---|---|
| Orijen Six Fish With New England Mackerel, Herring, Flounder, Redfish, Monkfish, Silver Hake Dry Dog Food | 3169.80 | 39.50 | 200.50 | 54.90 | 38.70 |
| Orijen Original Chicken, Turkey, Wild-Caught Fish, Eggs Dry Dog Food | 907.60 | 0.00 | 93.20 | 10.80 | 489.80 |
| Orijen Regional Red Angus Beef, Boar, Goat, Lamb, Pork, Mackerel Dry Dog Food | 849.40 | 43.60 | 123.10 | 21.40 | 167.70 |
| Acana Regionals Meadowland with Poultry, Freshwater Fish and Eggs Dry Dog Food | 846.40 | 82.70 | 37.50 | 8.70 | 489.00 |
| Acana Regionals Appalachian Ranch with Red Meats and Freshwater Catfish Dry Dog Food | 358.20 | 82.90 | 32.50 | 14.90 | 336.70 |
| Acana Regionals Grasslands with Lamb, Trout, and Game Bird Dry Dog Food | 262.80 | 0.00 | 30.60 | 9.60 | 305.00 |
| Orijen Regional Red Angus Beef, Ranch Raised Lamb, Wild Boar, Pork, Bison Dry Dog Food | 1066.50 | 37.70 | 62.10 | 21.70 | 138.50 |
| Acana Singles Duck and Pear Formula Dry Dog Food | 523.40 | 102.70 | 30.90 | 15.40 | 537.40 |

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

| Product Name | arsenic ug per kg | bpa ug per kg | cadmium ug per kg | mercury ug per kg | lead ug per kg |
|---|---|---|---|---|---|
| Acana Singles Lamb and Apple Formula Dry Dog Food | 401.20 | 73.20 | 35.00 | 3.20 | 423.40 |
| Acana Heritage Free-Run Poultry Formula Dry Dog Food | 292.90 | 62.20 | 27.80 | 3.30 | 290.20 |
| Acana Heritage Freshwater Fish Formula Dry Dog Food | 977.70 | 0.00 | 56.20 | 27.40 | 486.80 |
| Orijen Tundra Freeze Dried Venison, Elk, Bison, Quail, Steelhead Trout Wet Dog Food | 23.13 | 6.02 | 27.64 | 5.35 | 12.26 |
| Orijen Adult Dog Freeze Dried Chicken, Turkey, Wild-Caught Fish, Eggs Wet Dog Food | 23.21 | 13.41 | 7.74 | 9.45 | 7.33 |
| Orijen Regional Red Freeze Dried Angus Beef, Ranch Raised Lamb, Wild Boar, Pork, Bison Wet Dog Food | 102.66 | 0.00 | 23.40 | 19.60 | 16.85 |
| Orijen Six Fish Wild-Caught Regional Saltwater and Freshwater Fish Dry Dog Food | 2173.90 | 39.70 | 92.20 | 58.80 | 55.10 |
| Orijen Tundra Goat, Venison, Mutton, Bison, Arctic Char, Rabbit Dry Dog Food | 1628.50 | 40.30 | 134.50 | 43.60 | 471.80 |
| Orijen Grain Free Puppy Chicken, Turkey, Wild-Caught Fish, Eggs Dry Dog Food | 791.20 | 32.20 | 87.20 | 12.20 | 490.80 |

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

| Product Name | arsenic ug per kg | bpa ug per kg | cadmium ug per kg | mercury ug per kg | lead ug per kg |
|---|---|---|---|---|---|
| Acana Singles Mackerel and Greens Formula Dry Dog Food | 1510.70 | 40.10 | 112.20 | 29.60 | 251.10 |
| Acana Heritage Meats Formula Dry Dog Food | 384.80 | 58.30 | 24.40 | 6.40 | 1731.90 |
| Acana Singles Pork and Squash Formula Dry Dog Food | 373.70 | 57.60 | 25.60 | 4.00 | 329.60 |

7.      Defendants warrant, promise, represent, label, and/or advertise that the
Contaminated Pet Foods are free of any heavy metals and/or chemicals like BPA by
assuring the food represents an evolutionary diet that mirrors that of a wolf – free of
anything "nature did not intend for your dog to eat":



E-FILED 2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

8.      Defendants assert that: "Virtually All Of The Nutrients In Acana Are Natural And Not Synthetic."[4] Defendants make a similar claim to the Orijen dog foods in maintaining that the main source of any nutrient in Orijen is from a natural source.[5]

9.      Defendants further warrant, promise, represent, advertise, and declare that the Contaminated Dog Foods are made with protein sources that are "Deemed fit for human consumption":



---

[4] https://acana.com/wp-content/uploads/2015/10/DS-ACANA-Dog-Brochure-002.pdf

[5] https://www.orijen.ca/us/foods/dog-food/dry-dog-food/tundra/

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

**THE INCLUSION OF HEAVY METALS, BPA, AND ANY OTHER CHEMICALS AT ANY LEVEL WOULD BE MATERIAL TO A REASONABLE CONSUMER BASED ON THE INHERENT AND KNOWN RISKS OF CONSUMPTION AND/OR EXPOSURE**

**Heavy Metals**

10.     Based on the risks associated with exposure to higher levels of arsenic, both the U.S. Environmental Protection Agency ("EPA") and U.S. Food and Drug Administration ("FDA") have set limits concerning the allowable limit of arsenic at 10 parts per billion ("ppb") for human consumption in apple juice (regulated by the FDA) and drinking water (regulated by the EPA).[6]

11.     Moreover, the FDA is considering limiting the action level for arsenic in rice cereals for infants to 100 ppb.[7]

12.     The Contaminated Dog Foods also contain lead, which is another carcinogen and developmental toxin known to cause health problems.  Exposure to lead in food builds up over time.  Buildup can and has been scientifically demonstrated to lead to the development of chronic poisoning, cancer, developmental, and reproductive disorders, as well as serious injuries to the nervous system, and other organs and body systems.

---

[6] The FDA has taken action based on consumer products exceeding this limit, including testing and sending warning letters to the manufacturers.  *See*, *e.g*., Warning Letter from FDA to Valley Processing, Inc. (June 2, 2016), https://www.fda.gov/iceci/enforcementactions/warningletters/2016/ucm506526.htm.

[7] FDA, Draft Guidance for Industry: Inorganic Arsenic in Rice Cereals for Infants: Action Level (Apr. 2016), https://www.fda.gov/downloads/Food/GuidanceRegulation/GuidanceDocuments RegulatoryInformation/UCM493152.pdf.

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

13.    The Contaminated Dog Foods also contain mercury, which can cause damage to the cardiovascular system, nervous system, kidneys, and digestive tract in dogs. Continued exposure can also injure the inner surfaces of the digestive tract and abdominal cavity, causing lesions and inflammation. There have also been reports of lesions in the central nervous system (spinal cord and brain), kidneys, and renal glands.[8]

14.    Finally, the Contaminated Dog Foods contain cadmium, which has been observed to cause anemia, liver disease, and nerve or brain damage in animals eating or drinking cadmium. The U.S. Department of Health and Human Services has determined that cadmium and cadmium compounds are known human carcinogens and the EPA has likewise determined that cadmium is a probable human carcinogen. [9]

15.    Indeed, the FDA has acknowledged that "exposure to [these four heavy] metals are likely to have the most significant impact on public health" and has prioritized them in connection with its heavy metals workgroup looking to reduce the risks associated with human consumption of heavy metals.

16.    Despite the known risks of exposure to these heavy metals, Defendants have negligently, recklessly, and/or knowingly sold the Contaminated Dog Foods without disclosing they contain levels of arsenic, mercury, cadmium, and lead to consumers like

---

[8] https://wagwalking.com/condition/mercury-poisoning

[9] https://www.atsdr.cdc.gov/phs/phs.asp?id=46&tid=15

Plaintiff. Indeed, Defendants have publicly acknowledged that consumers "have deep feelings and a sense of responsibility for the well-being of their dogs and cats."[10]

17.     Additionally, Defendants knew or should have been aware that a consumer would be feeding the Contaminated Dog Foods multiple times each day to his or her dog, making it the main, if not only, source of food for the dog.  This leads to repeated exposure of the heavy metals to the dog.

18.     Defendants have wrongfully and misleadingly advertised and sold the Contaminated Dog Foods without any label or warning indicating to consumers that these products contain heavy metals, or that these toxins can over time accumulate in the dog's body to the point where poisoning, injury, and/or disease can occur.

19.     Defendants' omissions are material, false, misleading, and reasonably likely to deceive the public.  This is true especially in light of the long-standing campaign by Defendants to market the Contaminated Dog Foods as healthy and safe to induce consumers, such as Plaintiff, to purchase the products.  For instance, Defendants market the Contaminated Dog Foods as "Biologically Appropriate," using "Fresh Regional Ingredients" comprised of 100 percent meat, poultry, fish, and/or vegetables, both on the products' packaging and on Defendants' websites.

---

[10] https://www.theglobeandmail.com/amp/report-on-business/small-business/canadian-powerhouse-export-your-dog-is-eating-it/article37605774/

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

20.   Moreover, Defendants devote significant web and packaging space to the marketing of their DogStar® Kitchens, which they tell consumers "are the most advanced pet food kitchens on earth, with standards that rival the human food processing industry."

21.   Defendants state on their website that the Orijen pet foods "feature[] unmatched and unique inclusions of meat, naturally providing everything your dog or cat needs to thrive."  Defendants further promise on the products' packaging and on their websites that Orijen and Acana foods are "guaranteed" to "keep your dog happy, healthy, and strong."

22.   Using such descriptions and promises makes Defendants' advertising campaign deceptive based on the presence of heavy metals in the Contaminated Dog Foods. Reasonable consumers, like Plaintiff, would consider the mere inclusion of heavy metals in the Contaminated Dog Foods a material fact in considering what pet food to purchase.  Defendants' above-referenced statements, representations, partial disclosures, and omissions are false, misleading, and crafted to deceive the public as they create an image that the Contaminated Dog Foods are healthy, safe, and free of contaminants such as arsenic and lead.  Moreover, Defendants knew or should have reasonably expected that the presence of heavy metals in their Contaminated Dog Foods is something an average consumer would consider when purchasing dog food.  Defendants' representations and omissions are false, misleading, and reasonably likely to deceive the public.

23.   Moreover, a reasonable consumer, such as Plaintiff and other members of the Class, would have no reason to not believe and/or anticipate that the Contaminated Dog Foods are "Biologically Appropriate" foods that use "Fresh Regional Ingredients"

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

consisting only of meat, poultry, fish, and vegetables.  Non-disclosure and/or concealment of the toxins in the Contaminated Dog Foods coupled with the misrepresentations made by Defendants suggesting that the food provides complete health and is safe is intended to and does, in fact, cause consumers to purchase a product Plaintiff and members of the Class would not have bought if the true quality and ingredients were disclosed.  As a result of these false or misleading statements and omissions, Defendants have generated substantial sales of the Contaminated Dog Foods.

24.     The expectations of reasonable consumers and deception of these consumers by Defendants' advertising, misrepresentations, packaging, and labeling is further highlighted by the public reaction to this lawsuit as reported by various websites.

25.     Plaintiff brings this action individually and on behalf of all other similarly situated consumers within Iowa who purchased the Contaminated Dog Foods, in order to cause the disclosure of the presence of heavy metals that pose a known risk to both humans and animals in the Contaminated Dog Foods; to correct the false and misleading perception Defendants have created in the minds of consumers that the Contaminated Dog Foods are high quality, safe, and healthy; and to obtain redress for those who have purchased the Contaminated Dog Foods.

**"BPA"**

26.     The dangers of BPA in human food are recognized by the FDA, along with various states.  For instance, manufacturers and wholesalers are prohibited from selling any children's products that contain BPA and any infant formula, baby food, or toddler food stored in containers with intentionally added BPA.

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

27.     Still, certain Contaminated Dog Foods are sold by Defendants that contain levels of BPA—an industrial chemical that "'is an endocrine disruptor. It's an industrial chemical that according to Medical News Today '. . . interferes with the production, secretion, transport, action, function and elimination of natural hormones.'"[11]  BPA has been linked to various health issues, including reproductive disorders, heart disease, diabetes, cancer, and neurological problems.[12]

28.     Despite the presence of this harmful chemical, Defendants prominently warrant, claim, feature, represent, advertise, or otherwise market the Contaminated Dog Foods as made from "Biologically Appropriate" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables.   Indeed, each bag prominently displays the percentage of these ingredients on the front.

29.     Defendants' websites and packaging also warrant, claim, feature, represent, advertise, or otherwise market that their products are natural. In fact, Orijen's slogan is "Nourish as Nature Intended."

---

[11]Dr. Karen Beeker, *A Major Heads Up: Don't Feed This to Your Dog,* Healthy Pets (Feb. 13, 2017),   https://healthypets.mercola.com/sites/healthypets/archive/2017/02/13/dogs-canned-food-dangers.aspx.

[12] Christian Nordquist, *Bisphenol A: How Does It Affect Our Health?* Medical News Today (May 24, 2017), https://www.medicalnewstoday.com/articles/221205.php.

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT



30.     In promoting their promise, warranty, claim, representation, advertisement, or otherwise marketing that the Contaminated Dog Foods are safe and pure, Defendants further assure their customers:

> Equipped with state-of-the-art fresh food processing technologies, our DogStar® kitchens feature 25,000 square feet of cooler space, capable of holding over 500,000 pounds of fresh local meats, fish and poultry, plus fresh whole local fruits and vegetables.

> Unmatched by any pet food maker, our ingredients are deemed fit for human consumption when they arrive at our kitchens fresh, bursting with goodness, and typically within 48 hours from when they were harvested.

31.     To this end, Defendants' websites further warrant, claim, feature, represent, advertise, or otherwise market that the Contaminated Dog Foods are manufactured in such a way that would prevent BPA forming by closely monitoring temperatures and quality:

- "[O]ur unique Votator Heat Exchangers bring chilled fresh ingredients to room temperature without introducing water or steam, which enables us to add even more fresh meats into our foods."

- "Referred to as 'the most significant preconditioning development for extrusion cooking in the last 20 years,' our High Intensity

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

> Preconditioners were custom-built for DogStar®, feeding fresh meats from the Votators to Extruders at rates previously unheard of, and without high temperatures."

- "At the heart of our kitchens is a twin thermal extruder which is fed fresh ingredients from our High Intensity Preconditioner.

  The first of its kind in North America, it took 11 months to build, and features custom steam injection to enable very high fresh meat inclusions and a gentle cooking process which helps further reduce the carbohydrates in our foods and preserves their natural goodness."

32.     Thus, Defendants engaged in deceptive advertising and labeling practice by expressly warranting, claiming, stating, featuring, representing, advertising, or otherwise marketing on Acana and Orijen labels and related websites that the Contaminated Dog Foods are natural, fit for human consumption, fit for canine consumption, and made from "Biologically Appropriate" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables when they contain the non-naturally occurring chemical BPA.

33.     Based on these false representations, Defendants charge a premium, knowing that the claimed natural make-up of the Contaminated Dog Foods (as well as all of the other alleged false and/or misleading representations discussed herein) is something an average consumer would consider as a reason in picking a more expensive dog food.  By negligently and/or deceptively representing, marketing, and advertising the Contaminated Dog Foods as natural, fit for human consumption, fit for canine consumption, and made from "Biologically Appropriate" and "Fresh Regional Ingredients," consisting entirely of fresh meat, poultry, fish, and vegetables, Defendants wrongfully capitalized on, and reaped enormous profits from, consumers' strong preference for natural pet food products.

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

34.     Plaintiff brings this action individually and on behalf of all other similarly situated consumers within Iowa who purchased the Contaminated Dog Foods, in order to cause the disclosure of the presence of BPA that poses a known risk to both humans and animals in the Contaminated Dog Foods; to correct the false and misleading perception Defendants have created in the minds of consumers that the Contaminated Dog Foods are high quality, safe, and healthy; and to obtain redress for those who have purchased the Contaminated Dog Foods.

## PARTIES, JURISDICTION AND VENUE

35.     Plaintiff is, and at all times relevant hereto has been, a citizen of the state of Iowa and resides in Mills County, Iowa.  Plaintiff purchased the following Contaminated Dog Foods for her dog, Tiger, a 9-year-old Soft Coated Wheaten Terrier: ACANA Singles Protein Lamb and Apple.  Plaintiff purchased the Contaminated Dog Foods once per month on average between approximately February 2014 and February 2018, generally from chewy.com and petflow.com.  Prior to purchasing the Contaminated Dog Foods, Plaintiff saw the nutritional claims on the packaging, which she relied on when deciding to purchase the Contaminated Dog Foods.  During that time, based on the false and misleading claims, warranties, representations, advertisements, and other marketing by Defendants, Plaintiff was unaware that the Contaminated Dog Foods contained any level of heavy metals, chemicals, or toxins and would not have purchased the food if that was fully disclosed. Plaintiff was injured by paying a premium for the Contaminated Dog Foods that have no or *de minimis* value based on the presence of the alleged heavy metals, chemicals, and toxins.

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

36.     As the result of Defendants' negligent, reckless, and/or knowingly deceptive conduct as alleged herein, Plaintiff was injured when she paid the purchase price or a price premium for the Contaminated Dog Foods that did not deliver what was promised.  She paid the premium price on the assumption that the labeling of the Contaminated Dog Foods was accurate and that it was healthy, superior quality, natural, and safe for dogs to ingest. Plaintiff would not have paid this money had she known that the Contaminated Dog Foods contained any levels of the heavy metals, chemicals, and/or toxins. Plaintiff was further injured because the Contaminated Dog Foods have no or *de minimis* value based on the presence of the alleged heavy metals, chemicals, and toxins.  Damages can be calculated through expert testimony at trial.  Further, should Plaintiff encounter the Contaminated Dog Foods in the future, she could not rely on the truthfulness of the packaging, absent corrective changes to the packaging and advertising of the Contaminated Dog Foods.

37.     Defendant Champion Petfoods USA Inc. ("Champion USA") is incorporated in Delaware.  Its headquarters and principal place of business, as of March 2016, is located at 12871 Bowling Green Road, Auburn, KY 42206. Since that time, all Contaminated Pet Foods sold in the United States are manufactured, sourced, and sold by Champion USA. Champion USA conducts business in the state of Iowa by selling and advertising the Contaminated Dog Foods here.

38.     Defendant Champion Petfoods LP ("Champion Canada") is a Canadian limited partnership with its headquarters and principal place of business located at 11403-186 St NW, Edmonton, Alberta T5S 2W6.  Defendant Champion Canada wholly owns, operates, and/or controls Defendant Champion USA. Prior to March 2016, all

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

Contaminated Pet Foods sold in the United States were manufactured, sourced, and sold by Champion Canada.  Champion USA conducts business in the state of Iowa by selling and advertising the Contaminated Dog Foods here.

39.     Defendants formulate, develop, manufacture, label, distribute, market, advertise, and sell the Contaminated Dog Foods under the dog food brand names Orijen and Acana throughout the United States, including in Iowa and this District, during the Class Period (defined below).   The advertising, labeling, and packaging for the Contaminated Dog Foods, relied upon by Plaintiff, was prepared, reviewed, and/or approved by Defendants and their agents, and was disseminated by Defendants and their agents through marketing, advertising, packaging, and labeling that contained the misrepresentations alleged herein.  The marketing, advertising, packaging, and labeling for the Contaminated Dog Foods was designed to encourage consumers to purchase the Contaminated Dog Foods and mislead the reasonable consumer, *i.e.*, Plaintiff and the Class, into purchasing the Contaminated Dog Foods.  Defendants own, manufacture, and distribute the Contaminated Dog Foods, and created, allowed, negligently oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive labeling and advertising for the Contaminated Dog Foods.

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

## FACTUAL ALLEGATIONS

**The Contaminated Dog Foods**

40.     The Contaminated Dog Foods include the following:

(a) Acana Regionals Appalachian Ranch with Ranch-Raised Red Meats
& Freshwater Catfish Dry Dog Food;





E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

(b) Acana  Regionals  Grasslands  with  Grass-Fed  Kentucky  Lamb,

Freshwater Trout & Game Bird Dry Dog Food;





E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

(c) Acana Regionals Meadowland with Free-Run Poultry, Freshwater Fish, and Nest-Laid Eggs Dry Dog Food;





E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

(d) Acana Regionals Wild Atlantic with Wild New England Fish & Fresh Kentucky Greens Dry Dog Food;





E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

(e) Orijen Original with Fresh Free-Run Chicken and Turkey, Wild-Caught Fish and Nest-Laid Eggs Dry Dog Food;





E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

(f) Orijen Regional Red with Angus Beef, Wild Boar, Boer Goat, Romney Lamb, Yorkshire Pork & Wild Mackerel Dry Dog Food;





E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

(g) Orijen Regional Red Angus Beef, Ranch Raised Lamb, Wild Boar,

Pork, Bison Dry Dog Food;



E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

(h) Orijen Six Fish with New England Mackerel, Herring, Flounder, Redfish, Monkfish, and Silver Hake Dry Dog Food;





E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

(i)  Acana Singles Duck and Pear Formula Dry Dog Food;





E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

(j)  Acana Singles Lamb and Apple Formula Dry Dog Food;





E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

(k) Acana Heritage Free-Run Poultry Formula Dry Dog Food;





E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

(l)  Acana Heritage Freshwater Fish Formula Dry Dog Food;





E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

(m) Orijen Tundra Freeze Dried Venison, Elk, Bison, Quail, Steelhead

Trout Wet Dog Food;



E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

(n) Orijen Adult Dog Freeze Dried Chicken, Turkey, Wild Caught Fish,

Eggs Wet Dog Food;



E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

(o) Orijen Regional Red Freeze Dried Angus Beef, Ranch Raised Lamb, Wild Boar, Pork, Bison Wet Dog Food;



E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

(p) Orijen Regional Red Angus Beef, Ranch Raised Lamb, Wild Boar, Pork, Bison Dry Dog Food;



E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

(q) Orijen Six Fish Wild-Caught Regional Saltwater and Freshwater

Fish Dry Dog Food;



E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

(r)  Orijen Tundra Goat, Venison, Mutton, Bison, Arctic Char, Rabbit

Dry Dog Food;



E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

(s) Orijen Grain Free Puppy Chicken, Turkey, Wild-Caught Fish, Eggs Dry Dog Food;





E-FILED 2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

(t) Acana Singles Mackerel and Greens Formula Dry Dog Food;





E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

(u) Acana Heritage Meats Formula Dry Dog Food;





E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

(v) Acana Singles Pork and Squash Formula Dry Dog Food.





E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

**Heavy Metals Create Known Risks When Ingested**

41.     Toxins like arsenic, mercury, cadmium, and lead can cause serious illness to humans and animals.  A company should be vigilant to take all reasonable steps to avoid causing family pets to ingest these toxins.

42.     Arsenic is a semi-metal element in the periodic table.  It is odorless and tasteless.  Arsenic occurs naturally in the environment as an element of the earth's crust; it is found in rocks, soil, water, air, plants, and animals.  Arsenic is combined with other elements such as oxygen, chlorine, and sulfur to form inorganic arsenic compounds. Historically, arsenic compounds were used in many industries, including: (i) as a preservative in pressure-treated lumber; (ii) as a preservative in animal hides; (iii) as an additive to lead and copper for hardening; (iv) in glass manufacturing; (v) in pesticides; (vi) in animal agriculture; and (vii) as arsine gas to enhance junctions in semiconductors. The United States has canceled the approvals of some of these uses, such as arsenic-based pesticides, for health and safety reasons.  Some of these cancellations were based on voluntary withdrawals by producers.  For example, manufacturers of arsenic-based wood preservatives voluntarily withdrew their products in 2003 due to safety concerns, and the EPA signed the cancellation order.  In the Notice of Cancellation Order, the EPA stated that it "believes that reducing the potential residential exposure to a known human carcinogen is desirable."  Arsenic is an element—it does not degrade or disappear.

43.     Inorganic arsenic is a known cause of human cancer.  The association between inorganic arsenic and cancer is well documented.  As early as 1879, high rates of lung cancer in miners from the Kingdom of Saxony were attributed, in part, to inhaled

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

arsenic.  By 1992, the combination of evidence from Taiwan and elsewhere was sufficient to conclude that ingested inorganic arsenic, such as is found in contaminated drinking water and food, was likely to increase the incidence of several internal cancers.  The scientific link to skin and lung cancers is particularly strong and longstanding, and evidence supports conclusions that arsenic may cause liver, bladder, kidney, and colon cancers as well.

44.    Lead is a metallic substance formerly used as a pesticide in fruit orchards, but the use of such pesticides is now prohibited in the United States.  Lead, unlike many other poisons, builds up in the body over time as the person is exposed to and ingests it, resulting in a cumulative exposure which can, over time, become toxic and seriously injurious to health.  Lead poisoning can occur from ingestion of food or water containing lead.  Acute or chronic exposure to material amounts of lead can lead to severe brain and kidney damage, among other issues, and ultimately cause death.

45.    The FDA has set standards that regulate the maximum ppb of lead permissible in water: bottled water cannot contain more than 5 ppb of total lead or 10 ppb of total arsenic.  *See* 21 C.F.R. §165.110(b)(4)(iii)(A).

46.    Mercury is a known toxin that creates health risks to both humans and animals. The impact of the various ways humans and animals are exposed and ingest mercury has been studied for years. In fact, in as early as 1997, the EPA issued a report to Congress that detailed the health risks to both humans and animals.[13]

---

[13] https://www3.epa.gov/airtoxics/112nmerc/volume5.pdf

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

47.     Based on the toxicity and risks of mercury, regulations have been enacted at both the Federal and state level.

48.     Cadmium is likewise a known toxin that creates risk when ingested by animals or humans. It has been specifically noted that "Kidney and bone effects have [] been observed in laboratory animals ingesting cadmium.  Anemia, liver disease, and nerve or brain damage have been observed in animals eating or drinking cadmium."[14]

**Defendants Falsely Advertise the Contaminated Dog Foods as Nutritious, Superior Quality, Pure, and Healthy While Omitting Any Mention of the Heavy Metals, as Well as Claiming the Foods Are Natural, Pure, and Safe Despite the Inclusion of the Industrial Chemical BPA**

49.     Defendants formulate, develop, manufacture, label, package, distribute, market, advertise, and sell their extensive Acana and Orijen lines of dry and freeze-dried pet food products in Iowa and across the United States, including the Contaminated Dog Foods.

50.     Defendants tout themselves as "a leader and innovator in making pet foods, Champion works to our own standards. These are our standards, not USDA, not FDA, not CFIA. These agencies set minimum standards which we exceed exponentially. Why?  Because our Mission and our Values dictate that we do, and that's what pet lovers expect from us."

51.     In 2016, Defendants opened DogStar® Kitchens, a 371,100 square foot production facility on 85 acres of land outside Bowling Green, KY. This facility has the

---

[14] https://www.atsdr.cdc.gov/ToxProfiles/tp5-c1-b.pdf

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

capacity to produce up to 220 million pounds of Acana and Orijen pet food per year. The CEO of Champion Pet Foods, Frank Burdzy, said, "The US is our fastest growing market."[15]  Prior to this facility's construction, Defendants' Acana and Orijen products were exclusively manufactured in Canada. Since the DogStar® facility began production, all Acana and Orijen foods sold in the United States have been manufactured at that facility.

52.    Defendants have represented that their DogStar® Kitchens meet the European Union's standard for pet food ingredients processing. They have also represented a commitment to using fresh and local ingredients, including wild-caught fish.

53.    Defendants warrant, claim, state, represent, advertise, label, and market their Contaminated Dog Foods as natural, fit for human consumption, fit for canine consumption, and made from "Biologically Appropriate" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables; containing "only 1 supplement – zinc"; "provid[ing] a natural source of virtually every nutrient your dog needs to thrive"; and "guaranteed to keep your dog healthy, happy and strong."  Defendants had a duty to ensure that these statements were true.  As such, Defendants knew or should have known that the Contaminated Dog Foods included the presence of heavy metals and/or BPA.

54.    Likewise, by warranting, claiming, stating, featuring, representing, advertising or otherwise marketing that Orijen and Acana foods, including the

---

[15]    https://www.foodengineeringmag.com/articles/95994-champion-petfoods-opens-dogstar-kitchens

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

Contaminated Dog Foods, are natural, fit for human consumption, fit for canine consumption, and made from "Biologically Appropriate" and "Fresh Regional Ingredients," consisting entirely of fresh meat, poultry, fish, and vegetables, Defendants had a known duty to ensure that there were no chemicals included in the Contaminated Dog Foods. In fact, Defendants offered further assurances by representing the quality control over the manufacturing of the Contaminated Dog Foods as a rigid process free of outsourcing.

55.     Defendants specifically promise on their website, "[W]e prepare ACANA ourselves, in our own kitchens, where we oversee every detail of food preparation — from where our ingredients come from, to every cooking, quality and food safety process." Similarly, Defendants promise that their "Dogstar® Kitchens have access to a myriad of specialty family farms, with whom we partner for our supply of trusted ingredients." Finally, Defendants promise "[s]tandards that rival the human food processing industry for authenticity, nutritional integrity, and food safety."  According to the Orijen and Acana websites, Defendants' kitchens "feature state-of-the-art fresh food processing technologies."  As such, Defendants knew or should have known that higher temperatures coupled with the type of containers used in manufacturing create a real risk of BPA in their products.

56.     The Contaminated Dog Foods are available at numerous retail and online outlets in the United States, including Iowa.

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

57.     The Contaminated Dog Foods are widely advertised, and Defendants employ a Chief Marketing Officer, a Vice President for Customer Engagement, and a Director of Marketing in both the United States and Canada.

58.     The official websites for Acana and Orijen display the Contaminated Dog Foods; descriptions and full lists of ingredients for the Contaminated Dog Foods and include the following promises:

**AWARD-WINNING FOODS AND TREATS**

Biologically Appropriate™ ORIJEN represents a new class of food, designed to nourish dogs and cats according to their evolutionary adaptation to a diet rich and diverse in fresh meat and protein.

ORIJEN features unmatched inclusions of fresh free-run poultry, whole nest-laid eggs, whole wild-caught fish and ranch-raised meats – farmed or fished in our region by people we know and trust, and delivered to our kitchens daily so they're brimming with goodness.

Trusted by pet lovers everywhere, award-winning ORIJEN foods and treats are guaranteed to keep your cherished dogs and cats happy, healthy and strong!

**AWARD-WINNING BIOLOGICALLY APPROPRIATE™**

**OUR MISSION IS CLEAR AND STRONG**

We make Biologically Appropriate™ dog and cat foods from Fresh Regional Ingredients and we make them from start to finish in our very own award-winning kitchens.

Our mission represents a new standard in pet food, designed to nourish your dog and cat in two ways. First, according to its natural evolution to a meat and protein-rich diet. Second, using meats, poultry, eggs and fish that are sustainably ranched, farmed or fished by local suppliers and delivered to our kitchens fresh each day.

We think you'll love **ACANA**. More importantly, we think your dogs and cats will too.

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

59.     Defendants' websites repeat the false and misleading claims, warranties, representations, advertisements, and other marketing about the Contaminated Dog Foods benefits, quality, purity, and natural make-up, without any mention of the heavy metals and/or BPA they contain.  This is not surprising given that natural pet food sales represent over $5.5 billion in the United States and have consistently risen over the years.[16]



60.     Moreover, Defendants have themselves acknowledged the importance of quality dog food to the reasonable consumer:

> "Our No. 1 mandate is BAFRINO – biologically appropriate, fresh regional ingredients, never outsourced," said Frank Burdzy, President and Chief Executive Officer of Champion Petfoods in Canada, in an interview with the Daily News Monday prior to housewarming activities outside and inside the kitchens.

---

[16] Statista, *Natural and Organic Pet Food Sales in the U.S. from 2009 to 2019,* The Statistics Portal (accessed Oct. 25, 2017). https://www.statista.com/statistics/548957/us-sales-of-natural-and-organic-pet-food/

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

"We build relationships with our suppliers and farms and fisheries. We are trusted by pet owners," Burdzy said.[17]

61.     As a result of Defendants' omissions, a reasonable consumer would have no reason to suspect the presence of heavy metals and/or BPA in the Contaminated Dog Foods without conducting his or her own scientific tests, or reviewing third-party scientific testing of these products.

62.     However, after conducting third-party scientific testing, it is clear that the Contaminated Dog Foods do in fact contain levels heavy metals and/or BPA.

**Defendants' Statements and Omissions Violate Iowa Laws**

63.     Iowa's laws are designed to ensure that a company's claims about its products are truthful and accurate.  Defendants violated these state laws by negligently, recklessly, and/or intentionally incorrectly claiming that the Contaminated Dog Foods are pure, healthy, and safe for consumption and by not accurately detailing that the products contain the toxic heavy metals and/or BPA.  Defendants misrepresented that the Contaminated Dog Foods are natural, fit for human consumption, fit for canine consumption, and made from "Biologically Appropriate" and "Fresh Regional Ingredients," consisting entirely of fresh meat, poultry, fish, and vegetables; "feature[] unmatched and unique inclusions of meat, naturally providing everything your dog or cat needs to thrive"; and are "guaranteed" to "keep your dog happy, healthy, and strong."

---

[17] Mason, C., *Champion Petfoods DogStar Kitchens holds housewarming*, BOWLING GREEN DAILY NEWS (Jan. 5, 2016) *available at* http://www.bgdailynews.com/news/champion-petfoods-dogstar-kitchens-holds-housewarming/article_bf34275d-2242-5f3f-a9cc-14174235acc1.html?utm_medium=social&utm_source=email&utm_campaign=user-share   (last accessed March 1, 2018).

E-FILED 2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

64.     Defendants' marketing and advertising campaign has been sufficiently lengthy in duration, and widespread in dissemination, that it would be unrealistic to require Plaintiff to plead reliance upon each advertised misrepresentation.

65.     Defendants have engaged in this long-term advertising campaign to convince potential customers that the Contaminated Dog Foods were pure, healthy, safe for consumption, and did not contain harmful ingredients such as arsenic and lead. Likewise, Defendants have engaged in this long-term advertising campaign to convince potential customers that the Contaminated Dog Foods are natural, pure, and safe despite the presence of BPA in the food.

**Plaintiff's Reliance Was Reasonable and Foreseen by Defendants**

66.     Plaintiff reasonably relied on Defendants' own claims, warranties, representations, advertisements, and other marketing concerning the particular qualities and benefits of the Contaminated Dog Foods.

67.     Plaintiff relied upon Defendants' false and/or misleading representations alleged herein, including the websites and the Contaminated Dog Foods' labels and packaging in making her purchasing decisions.

68.     Any reasonable consumer would consider the labeling of a product (as well as the other false and/or misleading representations alleged herein) when deciding whether to purchase. Here, Plaintiff relied on the specific statements and misrepresentations by Defendants that the Contaminated Dog Foods were natural, fit for human consumption, fit for canine consumption, and made from "Biologically Appropriate" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables; "feature[ing]

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

unmatched and unique inclusions of meat, naturally providing everything your dog or cat needs to thrive"; and were "guaranteed" to "keep your dog happy, healthy, and strong" with no disclosure of the inclusion of heavy metals, including arsenic or lead, and BPA.

**Defendants' Knowledge and Notice of Their Breaches of Their Express and Implied Warranties**

69.      Defendants had sufficient notice of their breaches of express and implied warranties. Defendants have, and had, exclusive knowledge of the physical and chemical makeup of the Contaminated Dog Foods.

70.      Additionally, Defendants received notice of the contaminants in their dog and cat food, including the Contaminated Dog Foods, through the Clean Label Project, which found high levels of heavy metals in their dog and cat food products. In fact, Defendants responded to the Clean Label Project's findings. Defendants spoke with the Clean Label Project by phone regarding its findings and methodology, which showed that Orijen pet foods have high levels of heavy metals compared to other pet foods. The Clean Label Project informed Defendants that it compared Orijen pet foods to competitors' products and gave them a one-star rating, meaning they contained higher levels of contaminants than other products on the market. [18]   Defendants' direct contact with the Clean Label Project demonstrates their knowledge about the Contaminated Dog Foods.

---

[18]   Clean Label Project, "Orijen: Why Aren't You Listening to Your Customers?" http://www.cleanlabelproject.org/orijen-customers/ (last visited Feb. 6, 2018).

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

71.     Defendants also issued a white paper in defense of the Clean Label Project findings that acknowledges that their products contain heavy metals.[19]  In that same White Paper, Defendants state "[w]e systematically test ORIJEN and ACANA products for heavy metals (arsenic, cadmium, lead and mercury) at two third-party laboratories."

72.     The White Paper discusses the sources of arsenic, cadmium, lead, and mercury, and what Defendants contend to be acceptable levels of those heavy metals in pet food.

73.     Defendants did not widely disseminate this White Paper or direct consumers to this White Paper. Moreover, Defendants did not change their packaging or labeling to include a disclaimer that the Contaminated Dog Foods contain any levels of the heavy metals or include a copy of the White Paper findings on the packaging or labeling. Finally, there is no disclosure as to whether the Contaminated Dog Foods tested were manufactured in the United States or Canada.

74.     Defendants likewise had knowledge of the potential risk and inclusion of BPA in their Contaminated Dog Foods. Defendants have publicly stated they ask their suppliers if the packaging contains BPA while at the same time admitting that they in fact do not perform any tests to confirm that the Contaminated Dog Foods are BPA free. Moreover, Defendants no longer boast about "exceeding" regulations when asked if the Contaminated Pet Foods are BPA free.

---

[19]http://www.championpetfoods.com/wp-content/themes/champion-petfoods/res/research/Champion-Petfoods-White-Paper-Heavy-Metals.pdf

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

**Privity Exists with Plaintiff and the Proposed Class**

75.     Defendants knew that consumers such as Plaintiff and the proposed Class would be the end purchasers of the Contaminated Dog Foods and the target of their advertising and statements.

76.     Defendants intended that the warranties, advertising, labeling, statements, and representations would be considered by the end purchasers of the Contaminated Dog Foods, including Plaintiff and the proposed Class.

77.     Defendants directly marketed to Plaintiff and the proposed Class through statements on their website, labeling, advertising, and packaging.

78.     Plaintiff and the proposed Class are the intended beneficiaries of the expressed and implied warranties.

## CLASS ACTION ALLEGATIONS

79.     Plaintiff brings this action pursuant to Iowa Rules of Civil Procedure 1.261 *et. seq*. on behalf of themselves and the following Class:

> All persons who are citizens of the State of Iowa who, from July 1, 2013, to the present, purchased the Contaminated Dog Foods for household or business use, and not for resale (the "Class");

80.     Excluded from the Class are the Defendants, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

81.     This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation and the members of the Class are easily ascertainable.

82.     *Numerosity.*   The Class is so numerous that joinder of all members is impracticable.  While the exact number of absent Class members is unknown to Plaintiff at this time, it is ascertainable by appropriate discovery and Plaintiff are informed and believe, based upon the nature of trade and commerce involved that the proposed Class may include hundreds or thousands of members, thus satisfying the requirement of Rule 1.261(1).

83.     The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the Class members in a single action will provide substantial benefits to the parties and Court.

84.     *Questions of law and fact common* to Plaintiff and the Class include, but are not limited to, the following:

(a)     whether Defendants owed a duty of care to Plaintiff and the Class;

(b)     whether Defendants knew or should have known that the Contaminated Dog Foods contained heavy metals;

(c)     whether Defendants knew or should have known that the Contaminated Dog Foods contained BPA;

(d)     whether Defendants wrongfully represented and continue to represent that the Contaminated Dog Foods are natural, fit for human consumption, fit for canine consumption, and made from "Biologically Appropriate" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables;

(e)     whether Defendants wrongfully represented and continue to represent that the Contaminated Dog Foods are healthy, superior quality, nutritious, and safe for consumption;

(f)     whether Defendants wrongfully represented and continue to represent that the Contaminated Dog Foods are natural;

(g)     whether Defendants wrongfully represented and continue to represent that  the Contaminated Dog Foods are pure and safe;

(h)     whether Defendants wrongfully represented and continue to represent that the manufacturing of the Contaminated Dog Foods is subjected to rigorous standards, including temperature;

(i)     whether Defendants wrongfully failed to state that the Contaminated Dog Foods contained heavy metals and/or BPA;

(j)     whether Defendants' representations in advertising, warranties, packaging, and/or labeling are false, deceptive, and misleading;

(k)     whether those representations are likely to deceive a reasonable consumer;

(l)     whether a reasonable consumer would consider the presence of heavy metals and/or BPA as a material fact in purchasing pet food;

(m)     whether Defendants had knowledge that those representations were false, deceptive, and misleading;

(n)     whether Defendants continue to disseminate those representations despite knowledge that the representations are false, deceptive, and misleading;

(o)     whether a representation that a product is healthy, superior quality, nutritious, and safe for consumption and does not contain arsenic, cadmium, mercury, and/or lead is material to a reasonable consumer;

(p)     whether Defendants' representations and descriptions on the labeling of the Contaminated Dog Foods are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

(q)     whether Defendants violated variousIowa laws;

(r)     whether Defendants breached their express warranties;

(s)     whether Defendants breached their implied warranties;

E-FILED 2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

(t)     whether Defendants made negligent and/or fraudulent misrepresentations and/or omissions;

(u)     whether Plaintiff and the members of the Class are entitled to actual, statutory, and punitive damages; and

(v)     whether Plaintiff and members of the Class are entitled to declaratory and injunctive relief.

85.     *Fair and Efficient Adjudication of a Controversy.* A class action satisfies the requirement of Rules 1.262(2)(b), because a class action will permit the fair and efficient adjudication of the controversy. Plaintiff satisfies the criteria enumerated in Rule 1.263 for determining this issue, inter alia as follows:

a.     First, joint and common interests exist among members of the Class because Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Class. Identical statutory violations and business practices and harms are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action. Plaintiff's claims are typical of those of the members of the Class in that they are based on the same underlying facts, events, and circumstances relating to Defendants' conduct and they were all mislead by Defendants in purchasing the Contaminated Dog Foods; all overpaid for the dog food; and purchased pet food they would not have purchased if the levels of the heavy metals and BPA was fully disclosed by the Defendants per the criteria of Rule 1.263(1)(a). Moreover, the prosecution of separate actions by members

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendants per Rule 1.263(1)(b). Finally, the common questions predominate over any individual questions per the criteria in Rule 1.263(1)(e).

b.   Moreover, absent a class action, most members of the Class would likely find the cost of litigating their claims to be prohibitive, and will have no effective remedy at law in satisfaction of the criteria in Rule 1.263(1)(f),(g),(m).  Absent a class action, Class members will continue to suffer harm and Defendant's misconduct will proceed without remedy.

c.   There are no unusual management difficulties that would preclude class treatment.  The Class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication

d.   Finally, there are no other known actions brought by the proposed Class members that are not representative parties and thus they have no apparent substantial interest in individually controlling the prosecution of a separate action.

86.   *Adequate Representation.*  In accordance with Rule 1.262(2)(c) and 1.263(2), Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff has retained

E-FILED   2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

counsel with substantial experience in antitrust consumer class actions and complex litigation.  Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so.  Moreover, neither Plaintiff nor their counsel have any interests adverse to those of the members of the Class.

87.     Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Class is small such that, absent representative litigation, it would be infeasible for members of the Class to redress the wrongs done to them.

88.     As a result of the foregoing, class treatment is appropriate.

## CLAIMS FOR RELIEF

## COUNT I

**Breach of Express Warranty, Iowa Code § 554.2313, Against Defendants on Behalf of the Class**

89.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

90.     Defendants marketed and sold their Contaminated Dog Foods into the stream of commerce with the intent that the Contaminated Dog Foods would be purchased by Plaintiff and the Class.

91.     Defendants expressly warranted, advertised, and represented to Plaintiff and the Class that their Contaminated Dog Foods are:

(a) natural, fit for human consumption, fit for canine consumption, and made from "Biologically Appropriate" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables;

(b) contain "only 1 supplement – zinc";

(c) nutritious, superior quality, pure, natural,  healthy and safe for consumption;

(d) "provid[e] a natural source of virtually every nutrient your dog needs to thrive"; and

(e) "guaranteed to keep your dog healthy, happy and strong."

92.     Defendants made these express warranties regarding the Contaminated Dog Foods' quality, ingredients, and fitness for consumption in writing through their website, advertisements, and marketing materials and on the Contaminated Dog Foods' packaging and labels.  These express warranties became part of the basis of the bargain Plaintiff and the Class entered into upon purchasing the Contaminated Dog Foods.

93.     Defendants' advertisements, warranties, and representations were made in connection with the sale of the Contaminated Dog Foods to Plaintiff and the Class. Plaintiff and the Class relied on Defendants' advertisements, warranties, and representations regarding the Contaminated Dog Foods in deciding whether to purchase Defendants' products.

94.     Defendants' Contaminated Dog Foods do not conform to Defendants' advertisements, warranties, and representations in that they:

(a) are not natural or suitable for consumption by humans or canines;

(b) contain levels of various heavy metals; and

(c) contain levels of BPA.

95.     Defendants were on notice of this breach as they were aware of the included heavy metals and/or BPA in the Contaminated Dog Foods and based on the public investigation by the Clean Label Product that showed their dog food products as unhealthy.

96.     Privity exists because Defendants expressly warranted to Plaintiff and the Class that the Contaminated Dog Foods were natural, suitable for consumption, and contained only meat, poultry, fish, and/or vegetables, and guaranteed to keep dogs healthy, happy, and strong.

97.     As a direct and proximate result of Defendants' conduct, Plaintiff and the Class suffered actual damages in that they purchased Contaminated Dog Foods that are worth less than the price they paid and that they would not have purchased at all had they known of the presence of heavy metals and/or BPA.

98.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' failure to deliver goods conforming to their express warranties and resulting breach.

## COUNT II

### Breach of Implied Warranty of Merchantability, Iowa Code § 554.2314, Against Defendants on Behalf of the Class

99.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

100.    Defendants are merchants engaging in the sale of goods to Plaintiff and the Class.

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

101.   There was a sale of goods from Defendants to Plaintiff and members of the Class.

102.   At all times mentioned herein, Defendants manufactured or supplied the Contaminated Dog Foods, and prior to the time the Contaminated Dog Foods were purchased by Plaintiff and the Class, Defendants impliedly warranted to them that the Contaminated Dog Foods were of merchantable quality, fit for their ordinary use (consumption by dogs), and conformed to the promises and affirmations of fact made on the Contaminated Dog Foods' containers and labels, including that the food was:

(a) natural, fit for human consumption, fit for canine consumption, and made from "Biologically Appropriate" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables;

(b) contain "only 1 supplement – zinc";

(c) nutritious, superior quality, pure, natural, healthy and safe for consumption;

(d) "provid[e] a natural source of virtually every nutrient your dog needs to thrive"; and

(e) "guaranteed to keep your dog healthy, happy and strong."

103.   Plaintiff and the Class relied on Defendants' promises and affirmations of fact when they purchased the Contaminated Dog Foods.

104.   The Contaminated Dog Foods were not fit for their ordinary use, consumption by dogs, and did not conform to Defendants' affirmations of fact and promises as they contained heavy metals and/or BPA at levels material to a reasonable consumer.

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

105.   The Contaminated Dog Foods that Defendants delivered to Plaintiff and the Class also did not conform to affirmations of fact that they were natural because they contained the industrial chemical BPA.

106.   Defendants breached the implied warranties by selling the Contaminated Dog Foods that failed to conform to the promises or affirmations of fact made on the container or label as each product contained heavy metals and/or BPA.

107.   Defendants were on notice of this breach as they were aware of the heavy metals and/or BPA included in the Contaminated Dog Foods, and based on the public investigation by the Clean Label Product that showed their dog food products as unhealthy.

108.   Privity exists because Defendants impliedly warranted to Plaintiff and the Class through the warranting, packaging, advertising, marketing, and labeling that the Contaminated Dog Foods were healthy, natural, and suitable for consumption and by failing to mention heavy metals or BPA.

109.   As a direct and proximate result of Defendants' conduct, Plaintiff and the Class suffered actual damages in that they purchased Contaminated Dog Foods that are worth less than the price they paid and that they would have not have purchased at all had they known of the presence of heavy metals and/or BPA.

110.   Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' failure to deliver goods conforming to their implied warranties and resulting breach.

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

## COUNT III

### Fraud by Omission Against Defendants on Behalf of the Class

111.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

112.   Defendants concealed from and failed to disclose to Plaintiff and the Class that their Contaminated Dog Foods contained heavy metals and/or BPA.

113.   Defendants further concealed from and failed to disclose to Plaintiff and the Class that their Contaminated Dog Foods contained chemical ingredients.

114.   Defendants were under a duty to disclose to Plaintiff and members of the Class the true quality, characteristics, ingredients, and suitability of the Contaminated Dog Foods because: (1) Defendants were in a superior position to know the true state of facts about their product; (2) Defendants were in a superior position to know the actual ingredients, characteristics, and suitability of the Contaminated Dog Foods; and (3) Defendants knew that Plaintiff and the Class could not reasonably have been expected to learn or discover that the Contaminated Dog Foods were misrepresented in the packaging, labels, advertising, and website prior to purchasing the Contaminated Dog Foods.

115.   The facts concealed or not disclosed by Defendants to Plaintiff and the Class are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Contaminated Dog Foods.

116.   Plaintiff and the Class justifiably relied on the omissions of Defendants to their detriment.   The detriment is evident from the true quality, characteristics, and

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

ingredients of the Contaminated Dog Foods, which is inferior to what is advertised and represented by Defendants.

117.    As a direct and proximate result of Defendants' conduct, Plaintiff and the Class suffered actual damages in that they purchased Contaminated Dog Foods that are worth less than the price they paid and that they would not have purchased at all had they known of the presence of heavy metals and/or BPA.

118.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## COUNT IV

### Unjust Enrichment Against Defendants on Behalf of the Class

119.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

120.    Substantial benefits have been conferred on Defendants by Plaintiff and the Class through the purchase of the Contaminated Dog Foods.  Defendants knowingly and willingly accepted and enjoyed these benefits.

121.    Defendants either knew or should have known that the payments rendered by Plaintiff were given and received with the expectation that the Contaminated Dog Foods would have the qualities, characteristics, ingredients, and suitability for consumption represented and warranted by Defendants.  As such, it would be inequitable for Defendants to retain the benefit of the payments under these circumstances.

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

122.    Defendants' acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendants to retain the benefits without payment of the value to Plaintiff and the Class.

123.    Plaintiff and the Class are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants, plus interest thereon.

124.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

<u>**COUNT V**</u>

**Fraudulent Misrepresentation Against Defendants on Behalf of the Class**

125.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

126.    Defendants falsely represented to Plaintiff and the Class that their Contaminated Dog Foods are:

(a) natural, fit for human consumption, fit for canine consumption, and made from "Biologically Appropriate" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables;

(b) contain "only 1 supplement – zinc";

(c) nutritious, superior quality, pure, natural,  healthy and safe for consumption;

(d) "provid[e] a natural source of virtually every nutrient your dog needs to thrive"; and

(e) "guaranteed to keep your dog healthy, happy and strong."

127.    Defendants intentionally and knowingly made these misrepresentations to induce Plaintiff and the Class to purchase their Contaminated Dog Foods.

128.    Defendants knew that their representations about the Contaminated Dog Foods were false in that the Contaminated Dog Foods contain levels of heavy metals and/or BPA.  Defendants allowed their packaging, labels, advertisements, promotional materials, and website to intentionally mislead consumers, such as Plaintiff and the Class.

129.    Plaintiff and the Class did in fact rely on these misrepresentations and purchased the Contaminated Dog Foods to their detriment. Given the deceptive manner in which Defendants advertised, represented and otherwise promoted the Contaminated Dog Foods, Plaintiff and the Class' reliance on Defendants' misrepresentations was justifiable.

130.    As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered actual damages in that they purchased Contaminated Dog Foods that are worth less than the price they paid and that they would not have purchased at all had they known of the presence of heavy metals and/or BPA.

131.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## COUNT VI

**Negligent Misrepresentation Against Defendants on Behalf of the Class**

132.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

133.    Defendants had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the formulation, testing, formulation, manufacture, marketing, distribution, and sale of the Contaminated Dog Foods.

134.    Defendants breached their duty to Plaintiff and the Class by formulating, testing, manufacturing, advertising, marketing, distributing, and selling a product to Plaintiff that does not have the ingredients, qualities, characteristics, and suitability for consumption that Defendants' advertised and by failing to promptly remove the Contaminated Dog Foods from the marketplace or to take other appropriate remedial action.

135.    Defendants knew or should have known that the ingredients, qualities, and characteristics of the Contaminated Dog Foods were not as advertised or suitable for their intended use, consumption by dogs, and was otherwise not as warranted and represented by Defendants. Specifically, Defendants knew or should have known that: (1) the certain of the Contaminated Dog Foods were not natural because they contained levels of the chemical BPA; (2) the Contaminated Dog Foods were not nutritious, superior quality, pure, natural, healthy, and safe for consumption because they contained high levels of heavy metals; and (3) and the Contaminated Dog Foods were otherwise not as warranted and represented by Defendants.

136.    Plaintiff and the Class did in fact rely on these misrepresentations and purchased the Contaminated Dog Foods to their detriment. Given the negligent manner in which Defendants advertised, represented, and otherwise promoted the Contaminated Dog Foods, Plaintiff and the Class' reliance on Defendants' misrepresentations was justifiable.

137.    As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Contaminated Dog Foods

E-FILED 2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

that are worth less than the price they paid and that they would not have purchased at all had they known they contained heavy metals and/or BPA.

138.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## COUNT VII

### Violation of the Private Right of Action for the Consumer Frauds Act, Iowa Code Chapter 714H

139.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

140.    Plaintiff is a resident of the State of Iowa.

141.    Defendants are "persons" within the meaning of Iowa Code § 714.16(j).

142.    The Contaminated Dog Foods are "merchandise" within the meaning of Iowa Code § 714.16(i).

143.    There was a sale of merchandise from Defendants to Plaintiff and members of the Class.

144.    As required by Iowa law, the Iowa Attorney General has approved pursuit of this suit as a class action.

145.    Defendants' deceptive representations and material omissions to Plaintiff and the Class constitute unfair and deceptive acts and practices under Iowa law.

146.    Pursuant to Iowa law, Defendants had a statutory duty to refrain from unfair or deceptive acts or practices in the manufacture, promotion, and sale of the Contaminated Dog Foods to Plaintiff and the Class.

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

147. Defendants violated this statutory prohibition against engaging in unlawful acts and practices by, *inter alia*, misrepresentating and omitting material facts with the "intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission" in connection with the sale of their Contaminated Dog Foods.  Iowa Code § 714H.3.

148. In connection with the sale to consumers of the Contaminated Dog Foods, Defendants engaged in unfair and deceptive acts and practices, as alleged in this Petition by unfairly and deceptively misrepresenting their Contaminated Dog Foods are:

> (a) natural, fit for human consumption, fit for canine consumption, and made from "Biologically Appropriate" and "Fresh Regional Ingredients" consisting entirely of fresh meat, poultry, fish, and vegetables;
>
> (b) contain "only 1 supplement- zinc";
>
> (c) "provid[e] a natural source of virtually every nutrient your dog needs to thrive"; and
>
> (d) "guaranteed to keep your dog healthy, happy, and strong."

149. Defendants had exclusive knowledge of the material facts that the Contaminated Dog Foods contained various levels of heavy metals and/or BPA and failed to disclose such information to Plaintiff and the Class.

150. The facts concealed or not disclosed by Defendants to Plaintiff and the Class are material in that a reasonable consumer would have considered them to be important when deciding whether to purchase the Contaminated Dog Foods.

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

151.   Defendants intended for Plaintiff and the Class to rely on their misrepresentations, deceptions, and/or omissions regarding the Contaminated Dog Foods' quality, ingredients, and suitability for consumption by dogs.

152.   Plaintiff and the Class were actually deceived by Defendants' misrepresentations, deceptions, and omissions regarding the Contaminated Dog Foods' quality, ingredients, and suitability for consumption by dogs.

153.   Defendants' conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Contaminated Dog Foods is unfair because it was substantially injurious to consumers, not outweighed by the benefits to consumers, and is not one consumers, themselves, can reasonably avoid.

154.   Plaintiff and the Class members were unaware, and did not have reasonable means of discovering the material facts that Defendants had misrepresented and failed to disclose.

155.   As a direct and proximate result of the unfair and deceptive conduct of the Defendants, Plaintiff and the Class sustained damages when they purchased the Contaminated Dog Foods that are worth less than the price paid and that they would not have purchased at all had they known of the presence of heavy metals and/or BPA.

156.   Substantial benefits have been conferred on Defendants by Plaintiff and the Class through the purchase of the Contaminated Dog Foods.  Defendants knowingly and willingly accepted and enjoyed these benefits.

E-FILED 2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

157.    Pursuant to Iowa Code § 714H.5, Plaintiff and the Class seek actual damages, equitable relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' violations of the Iowa Consumer Frauds Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against the Defendants as to each and every count, including:

A.    An order declaring this action to be a proper class action, appointing Plaintiff and her counsel to represent the Class, and requiring Defendants to bear the costs of class notice;

B.    An order enjoining Defendants from selling the Contaminated Dog Foods until the levels of heavy metals and/or BPA are removed or full disclosure of the presence of such appear on all labels, packaging, and advertising;

C.    An order enjoining Defendants from selling the Contaminated Dog Foods in any manner suggesting or implying that they are healthy, natural, and safe for consumption;

D.    An order requiring Defendants to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing products;

E.    An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

F.      An order requiring Defendants to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of Iowa law, plus pre- and post-judgment interest thereon;

G.      An order requiring Defendants to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

H.      An order requiring Defendants to pay all actual and statutory damages permitted under the counts alleged herein;

I.      An order requiring Defendants to pay punitive damages on any count so allowable;

J.      An order awarding attorneys' fees and costs, including the costs of pre-suit investigation, to Plaintiff and the Class; and

K.      An order providing for all other such equitable relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

Dated: October __, 2018                 /s/ J. Barton Goplerud

                                      J. Barton Goplerud, AT0002983
                                      Brandon M. Bohlman, AT0011668
                                      SHINDLER, ANDERSON, GOPLERUD &
                                      WEESE, P.C.
                                      5015 Grand Ridge Drive, Suite 100
                                      West Des Moines, IA 50265-5749
                                      Telephone:   (515) 223-4567
                                      Facsimile:   (515) 223-8887
                                      Email:          goplerud@sagwlaw.com
                                      bohlman@sagwlaw.com


                                      LOCKRIDGE GRINDAL NAUEN P.L.L.P.
                                      ROBERT K. SHELQUIST
                                      REBECCA A. PETERSON (241858)
                                      100 Washington Avenue South, Suite 2200
                                      Minneapolis, MN 55401
                                      Telephone: (612) 339-6900
                                      Facsimile: (612) 339-0981
                                      E-mail: rkshelquist@locklaw.com
                                               rapeterson@locklaw.com


                                      ROBBINS ARROYO LLP
                                      KEVIN A. SEELY (199982)
                                      STEVEN M. MCKANY (271405)
                                      600 B Street, Suite 1900
                                      San Diego, CA 92101
                                      Telephone: (619) 525-3990
                                      Facsimile: (619) 525-3991
                                      E-mail: kseely@robbinsarroyo.com
                                               smckany@robbinsarroyo.com

GUSTAFSON GLUEK, PLLC
DANIEL E. GUSTAFSON
KARLA M. GLUEK
JOSEPH C. BOURNE (308196)
RAINA C. BORRELLI
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
E-mail: dgustafson@gustafsongluek.com
       kgluek@gustafsongluek.com
       jbourne@gustafsongluek.com
       rborrelli@gustafsongluek.com


CUNEO GILBERT & LADUCA, LLP
CHARLES LADUCA
KATHERINE VAN DYCK
4725 Wisconsin Ave NW, Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
E-mail: kvandyck@cuneolaw.com
       charles@cuneolaw.com


LITE DEPALMA GREENBERG, LLC
JOSEPH DEPALMA
SUSANA CRUZ HODGE
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
E-mail:  jdepalma@litedepalma.com
       scruzhodge@litedepalma.com


STEPHENS & STEPHENS LLP
CONRAD B. STEPHENS
505 South McClelland Street
Santa Maria, CA 93454
Telephone: (805) 922-1951
E-mail: conrad@stephensfirm.com

E-FILED  2018 OCT 19 2:06 PM MILLS - CLERK OF DISTRICT COURT

ANDREWS DEVALERIO LLP
GLEN DEVALERIO
DARYL ANDREWS
265 Franklin Street, Suite 1702
Boston, MA 02110
Telephone: (617) 936-2796
E-mail:   glen@andrewsdevalerio.com
          daryl@andrewsdevalerio.com


POMERANTZ LLP
GUSTAVO F. BRUCKNER
SAMUEL J. ADAMS
600 Third Avenue
New York, NY 10016
Telephone: (212) 661-1100
E-mail: gfbruckner@pomlaw.com
        sjadams@pomlaw.com


**Attorneys for Plaintiff**

**IN THE IOWA DISTRICT COURT IN AND FOR MILLS COUNTY**

| | |
|---|---|
| **PAM BLACKBURN,** individually and on behalf of a class of similarly situated individuals, | **CASE NO. CVCV026865** |
| **PLAINTIFF,** | |
| V. | **ACCEPTANCE OF SERVICE** |
| **CHAMPION PETFOODS USA, INC.** and **CHAMPION PETFOODS LP,** | |
| **DEFENDANTS.** | |

STATE OF _FLORIDA_ )
                        ) ss.
COUNTY OF _Miami-Dade_ )

       I, _David A. Coulson_, being duly sworn on oath, hereby accept service on behalf of Defendant Champion Petfoods USA, Inc., of the Original Notice and Class Action Petition and Jury Demand electronically-filed in this matter in Mills County, Iowa District Court on the 19th day of October, 2018.

_[signature]_
_____
David A. Coulson
GREENBERG TRAURIG, LLP
333 SE 2nd Avenue,   Suite 4400
Miami, FL   33131

       Subscribed and sworn to before me by the said _David A. Coulson_ on this _23_ day of _October_ 2018.

_[signature]_
_____
Notary Public in and for the State of _FLORIDA_

MICHELLE M. CRUZ
Notary Public - State of Florida
Commission # GG 040691
My Comm. Expires Oct 20. 2020
Bonded through National Notary Assn.

IN THE IOWA DISTRICT COURT IN AND FOR MILLS COUNTY

| | |
|---|---|
| **PAM BLACKBURN,** individually and on behalf of a class of similarly situated individuals,<br><br>**PLAINTIFF,**<br><br>V.<br><br>**CHAMPION PETFOODS USA, INC.** and **CHAMPION PETFOODS LP,**<br><br>**DEFENDANTS.** | **CASE NO. CVCV026865**<br><br><br>**ACCEPTANCE OF SERVICE** |

STATE OF _Florida_                    )
                                         ) ss.
COUNTY OF _Miami-Dade_          )

   I, _David A. Coulson_____, being duly sworn on oath, hereby accept service on behalf of Defendant Champion Petfoods LP, of the Original Notice and Class Action Petition and Jury Demand electronically-filed in this matter in Mills County, Iowa District Court on the 19th day of October, 2018.

_____
David A. Coulson
GREENBERG TRAURIG, LLP
333 SE 2nd Avenue,   Suite 4400
Miami, FL   33131

   Subscribed and sworn to before me by the said _David Coulson_____ on this _23_ day of _October_, 2018.

_____
Notary Public in and for the State of _Florida_____

MICHELLE M. CRUZ
Notary Public - State of Florida
Commission # GG 040691
My Comm. Expires Oct 20. 2020
Bonded through National Notary Assn.

# Iowa Courts Online Search

**Search Results**
**Back**

Print All Pages

**Help**
**Home**
**New Search**

Trial Court Case Details

---

[Summary]   Parties   [Long Title]   [Filings]   Property/Lis Pendens   [Criminal Charges/Disposition]   Judgme

Exhibits   [Financial]   [Bonds]   Service Returns   Traffic Details   *Links in this section without [ ] are for registered users only R*

## Summary                                                                                          EDMS

Title: PAM BLACKBURN V. CHAMPION PETFOODS USA, ET AL.

| **Trial Court Case ID** | **Originating County** | **Created** | **Speedy Trial** | **Microfilm Ref** |
|---|---|---|---|---|
| 04651 CVCV026865 | MILLS | 10/19/2018 | | |

| **Citation Number** | **Disposition Status** | **Disposition Date** | **Reopened Date** | |
|---|---|---|---|---|
| | | | | |

No Disposition records were found.

CN=John Q Public,O=JUDICIAL

Logon   Register

Certain details of case data are only shown to subscribers. You may logon at this time if you are a subscriber, or you may be become a subscriber by registering at this time. There is a $25.00 per month subscription fee.

For exclusive use by the Iowa Courts
© State of Iowa,  All Rights Reserved